**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| RONALD F. KINSEY, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> CLUBCORP HOLDINGS, INC., JOHN A. BECKERT, DOUGLAS H. BROOKS, ERIC L. AFFELDT, JANET GROVE, JEFF LAMB, LOU J. GRABOWSKY, EMANUEL R. PEARLMAN, MARGARET SPELLINGS, WILLIAM E. SULLIVAN, and SIMON M. TURNER, <br><br> Defendants. | CIVIL ACTION NO. _____ <br><br> **CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Ronald F. Kinsey ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff brings this class action on behalf of the public stockholders of ClubCorp Holdings, Inc. ("ClubCorp" or the "Company") against the members of ClubCorp's Board of Directors (the "Board" or the "Individual Defendants") or their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rules 14a-9, 17 C.F.R. 240.14a-9, 17 C.F.R. § 244.100, and 17 C.F.R. § 229.1015(b)(4), arising out of their attempt to sell the Company to Constellation Club Parent, Inc. ("Parent") and Constellation Merger Sub, Inc. ("Merger Sub," and, together with Parent, "Constellation"), affiliates of Apollo Management VIII, L.P. ("Apollo").

2. On July 9, 2017, Apollo and the Company announced they had entered into an Agreement and Plan of Merger ("Merger Agreement"), by which Parent, through its wholly owned

subsidiary, Merger Sub, will acquire all of the outstanding shares of ClubCorp in a cash transaction in which ClubCorp stockholders will receive $17.12 in cash for each share of ClubCorp common stock (the "Proposed Transaction"). The Proposed Transaction has an equity value of approximately $1.1 billion.

3. On August 8, 2017, ClubCorp filed a Definitive Proxy Statement on a Schedule 14A (the "Proxy") with the SEC setting the stockholder vote on the Proposed Transaction for September 15, 2017 ("Stockholder Vote"). The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding the Company's financial projections, which were prepared by Company management and relied upon by Jefferies LLC ("Jefferies") and Wells Fargo Securities, LLC ("Wells Fargo"), the Company's financial advisors, the financial analysis performed by Jefferies and Wells to support their opinions on the fairness of the Proposed Transaction, and the background of the Proposed Transaction.

4. Without additional information the Proxy is materially misleading in violation of federal securities laws.

5. By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading. The Proxy is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

6. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the Stockholder Vote on the Proposed Transaction unless and until the material information discussed below is disclosed to ClubCorp's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8.      Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) ClubCorp maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**PARTIES AND RELEVANT NON-PARTIES**

10.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock of ClubCorp.

11.     ClubCorp is a corporation organized and existing under the laws of the State of Nevada.  It maintains principal executive offices at 3030 LBJ Freeway, suite 600, Dallas, Texas, 75234.  ClubCorp's common stock is traded on the New York Stock Exchange under the ticker symbol "MYCC."

12. Defendant John A. Beckert ("Beckert") has served as Chairman of the Board and a director of ClubCorp since August 2013.

13. Defendant Douglas H. Brooks ("Brooks") has served as a director of the Company since August 2013.

14. Defendant Eric L. Affeldt ("Affeldt") has served as Chief Executive Officer ("CEO") of the Company since December 2006 and as a director since 2006.

15. Defendant Janet Grove ("Grove") has served as a director of the Company since August 2013.

16. Defendant Lou J. Grabowsky ("Grabowsky") has served as a director of the Company since August 2015.

17. Defendant Jeff Lamb ("Lamb") has served as a director of the Company since June 2016.

18. Defendant Emanuel R. Pearlman ("Pearlman") has served as a director of the Company since May 2017.

19. Defendant Margaret Spelling ("Spellings") has served as a director of the Company since September 2015.

20. Defendant William E. Sullivan ("Sullivan") has served as a director of the Company since August 2013.

21. Defendant Simon M. Turner ("Turner") has served as a director of the Company since May 2017.

22. Defendants referenced in ¶¶ 12 through 21 are collectively referred to as the "Individual Defendants" or the "Board."

23. Relevant non-party Parent is an affiliate of the certain funds ("Apollo Funds") that are managed by Apollo. Parent was created solely for the purposes of effectuating the Proposed Transaction. Parent's principle executive offices are located at 9 West 57th Street, 43rd Floor, New York, New York, 10019.

24. Relevant non-party Merger Sub is a Nevada corporation and wholly-owned subsidiary of Parent that was created for the purposes of effectuating the Proposed Transaction.

25. Relevant non-party Apollo manages the Apollo Funds. When Apollo Management is acting on behalf of the Apollo Funds, they are referred to as "Apollo".

26. Relevant non-parties Apollo Investment Fund VIII, L.P., Apollo Overseas Partners (Delaware 892) VIII, L.P., Apollo Overseas Partners (Delaware) VIII, L.P., and Apollo Overseas Partners VIII (AIV), L.P. are collectively the "Guarantors" of Parent and Merger Sub.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action as a class action on behalf of all persons and/or entities that own ClubCorp common stock (the "Class"). Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

28. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. The Merger Agreement states that, as of July 3, 2017, there were 65,717,593 shares of common stock outstanding. All members of the Class may be identified from records maintained by ClubCorp or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

29. Questions of law and fact are common to the Class, including (i) whether Defendants solicited stockholder approval of the Proposed Transaction through a materially false or misleading Proxy in violation of federal securities laws; (ii) whether Plaintiff and other Class members will suffer irreparable harm if securities laws violations are not remedied before the Stockholder Vote on the Proposed Transaction; and (iii) whether the Class entitled is to injunctive relief as a result of Defendants' wrongful conduct.

30. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

31. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

32. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

## FURTHER SUBSTANTIVE ALLEGATIONS

*Company Background and the Proposed Transaction*

33. ClubCorp, founded in 1957, is a leading owner-operator of private golf and country clubs and private business clubs in North America. The Company owns or operates over 200 such clubs, serving over 430,000 members.

34. On July 9, 2017, ClubCorp and Apollo issued a joint press release announcing the Proposed Transaction, reading in relevant part:

> DALLAS and NEW YORK, July 09, 2017 (GLOBE NEWSWIRE) -- ClubCorp – The World Leader in Private Clubs® (NYSE:MYCC), today announced that it has entered into a definitive agreement with affiliates of certain investment funds (the "Apollo funds") managed by affiliates of Apollo

Global Management, LLC (together with its consolidated subsidiaries, "Apollo") (NYSE:APO), a leading global alternative investment manager, pursuant to which the Apollo funds will acquire all of the outstanding shares of ClubCorp for $17.12 per share in cash, or approximately $1.1 billion. The all-cash transaction represents a premium of approximately 30.7% over ClubCorp's closing stock price on July 7, 2017.

The ClubCorp Board of Directors ("Board"), acting with the recommendation of its Strategic Review Committee, unanimously approved the agreement with the Apollo funds. The Board, along with the Strategic Review Committee, the management team and independent financial and legal advisors, conducted a robust and thorough strategic review process, which included discussions with a wide array of potential counterparties regarding a range of possible transactions.

"We are pleased to reach this agreement with the Apollo funds, which follows a comprehensive review of strategic alternatives by ClubCorp's Board of Directors," said John Beckert, Chairman of the Board of ClubCorp. "With the support of the Apollo funds, we are confident that ClubCorp will be able to continue building on its success by providing its members with unrivalled experiences at its clubs. This transaction represents the culmination of our review of strategic alternatives and achieves our goal of enhancing value for shareholders. The company looks forward to working closely with Apollo as it enters the next stage of its growth."

"We are excited for our funds to be acquiring ClubCorp," said David Sambur, Senior Partner at Apollo. "We look forward to working with ClubCorp's outstanding management team and talented employees, who have built a best-in-class member-centric business that delivers exceptional experiences. We plan to leverage Apollo's resources and expertise while working with ClubCorp's dedicated team to continue to grow the business and provide the highest level of service and club offerings to members."

**Transaction Details**

The transaction is subject to customary closing conditions, including approval by ClubCorp shareholders, and is expected to close in the fourth quarter of this year. Upon completion of the transaction, ClubCorp will be a privately held company, and ClubCorp's common shares will no longer be listed on the New York Stock Exchange.

**Dividend**

The ClubCorp Board of Directors also declared a one-time quarterly dividend of $0.13 per share of common stock. The dividend is expected to be paid on

July 28, 2017, to shareholders of record at the close of business on July 21, 2017.

### *The Materially Misleading and Incomplete Proxy*

35. Defendants have failed to provide stockholders with material information necessary for an informed vote on the Proposed Transaction. The Proxy, which recommends that the Company's stockholders vote in favor of the Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *Misleading Statements and Omissions Regarding Financial Projections*

36. The Proxy fails to provide material information concerning the Company's financial projections.

37. The Proxy discloses financial projections that the Company provided to the Board, Jefferies, and Wells Fargo during the process leading up to the execution of the Merger Agreement. These projections include "Levered Free Cash Flow" for the years 2017 through 2021, despite the use of "Unlevered Free Cash Flow" by Jefferies and Wells Fargo in their respective Discounted Cash Flow Analyses.

38. Thus, despite disclosing "Levered Free Cash Flow," the Proxy omits the actual measure used by the financial advisors of unlevered free cash flow, or any line items needed to evaluate the difference between these measures.

39. The Proxy fails to disclose the following Company projections for years 2017E through 2021E: (i) unlevered free cash flow; (ii) changes in net working capital; and (iii) capital expenditures. Without these measures, cherry-picking the disclosed projections materially misleads ClubCorp stockholders and renders the financial analyses of Jefferies and Wells Fargo misleading, or at best, meaningless.

*Material Omissions Concerning the Financial Advisors' Financial Analyses*

40. The Proxy describes the fairness opinions provided by Jefferies and Wells Fargo, and the various valuation analyses they performed in support of these opinions. However, the description of the fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, ClubCorp's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinions in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to ClubCorp's stockholders.

41. The Proxy fails to disclose various material elements of the financial analyses performed by Jefferies.

42. With respect to Jefferies' *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the range of illustrative terminal values of ClubCorp; (ii) the inputs underlying the discount rates ranging from 11.5% to 12.5%; and (iii) Jefferies' basis for applying perpetuity growth rates ranging from 2.75% to 3.25% under the perpetuity growth methodology.

43. With respect to Jefferies' *Selected Public Companies Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for the companies observed by Jefferies in the analysis. The failure to provide these multiples misleads stockholders as to the spread and usefulness of the selected multiples, allowing Jefferies to select outlier values to skew the fairness analysis.

44. With respect to Jefferies' *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for the transactions observed by Jefferies in the analysis. The failure to provide these multiples misleads stockholders as to the spread and

usefulness of the selected multiples, allowing Jefferies to select outlier values to skew the fairness analysis.

45. The Proxy fails to disclose various material elements of the financial analyses performed by Wells Fargo.

46. With respect to Wells Fargo's *Selected Public Companies Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for the companies observed by Wells Fargo in the analysis. The failure to provide these multiples misleads stockholders as to the spread and usefulness of the selected multiples, allowing Jefferies to select outlier values to skew the fairness analysis.

47. With respect to Wells Fargo's *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for the transactions observed by Jefferies in the analysis. The failure to provide these multiples misleads stockholders as to the spread and usefulness of the selected multiples, allowing Wells Fargo to select outlier values to skew the fairness analysis.

48. With respect to Wells Fargo's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the range of illustrative terminal values of ClubCorp; (ii) the inputs underlying the discount rates ranging from 11.5% to 12.5%; and (iii) Wells Fargo's basis for applying perpetuity growth rates ranging from 2.75% to 3.25% under the perpetuity growth methodology.

49. Without the material information described above, stockholders cannot make an informed decision whether or not to vote in favor of the Proposed Transaction, and have been harmed thereby. These omissions materially mislead ClubCorp stockholders as to the as to the accuracy and value of the analyses underlying Jefferies' and Wells Fargo's fairness opinions, and the veracity of the fairness opinions themselves.

### *Potential Conflicts of Interest Facing ClubCorp Management*

50. The Proxy omits material information regarding potential conflicts of interest faced by the Company's officers and directors.

51. Specifically, the Proxy fails to disclose the timing and nature of all communications regarding future employment and/or directorship of ClubCorp's officers and directors, including who participated in all such communications.

52. The press release announcing the transaction implies that Company management will remain with the Company following the transaction:

> We plan to leverage Apollo's resources and expertise while working with ClubCorp's dedicated team to continue to grow the business and provide the highest level of service and club offerings to members.

53. While the press release announcing the Proposed Transaction assumes that the "ClubCorp's dedicated team" will continue with the company after the acquisition, the Proxy discloses no information regarding when the parties discussed this, what was discussed, and who was involved in such discussions.

54. As a private equity fund, Apollo lacks the personnel or expertise to run ClubCorp operations without the current ClubCorp management, and would need to make an expectation of continued employment clear from the outset.

55. Without the disclosure of all retention-related communications and discussions, ClubCorp stockholders have no ability to understand which ClubCorp management and directors faced potential conflicts, and when these potential conflicts arose, causing them to favor a transaction with Apollo over other potential strategic alternatives.

56. Defendants' failure to provide ClubCorp's stockholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this

information. The material information described above that was omitted from the Proxy takes on actual significance in the minds of ClubCorp's stockholders in reaching their decision whether to vote in favor of the Proposed Transaction. Absent disclosure of this material information prior to the vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make an informed decision about whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm for which damages are not an adequate remedy.

## **CLAIMS FOR RELIEF**

## **COUNT I**

### **Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder**

57. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58. Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction.

59. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

60. Specifically, the Proxy violates Section 14(a) and Rule 14a-9 because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omitted material facts that are necessary to render the statements that are made non-misleading.

61. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth.

62. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their right to cast a fully informed vote on the Proposed Transaction.

63. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

64. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

65. The Individual Defendants acted as controlling persons of ClubCorp within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of ClubCorp, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

66. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

67. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

68. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

69. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

70. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

71. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

/ / /

**RELIEF REQUESTED**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A) declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B) declaring that the Proxy is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(C) preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

(D) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff and the members of the Class rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

(E) awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

(F) awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

(G) granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 16, 2017    **KEMP, JONES & COULTHARD LLP**

By: _/s/ Michael J. Gayan_
Michael J. Gayan
Nevada Bar #11135
Wells Fargo Tower, 17th Floor
3800 Howard Hughes Parkway
Las Vegas, NV 89169
(702) 385-6000

*Attorneys for Plaintiff*

**OF COUNSEL:**

**LEVI & KORSINSKY LLP**
Donald J. Enright
Elizabeth K. Tripodi
1101 30th Street, N.W.
Suite 115
Washington, DC 20007
(202) 524-4290

**VINCENT WONG LAW OFFICES**
Vincent S. Wong, Esq.
39 East Broadway, Suite 304
New York, NY 10002

**CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS**

I, Ronald F. Kinsey , declare as to the claims asserted under the federal securities laws, as follows:

1. I have reviewed the Complaint and authorized its filing.

2. I did not purchase the securities that are the subject of this Complaint at the direction of Plaintiffs' counsel or in order to participate in this litigation.

3. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. I currently hold shares of ClubCorp Holdings, Inc. My purchase history is as follows:

| Purchase Date | Stock Symbol | Shares Transacted | Price Per Share |
|---|---|---|---|
| 10/25/13 | MYCC | 37 | 14.00 |
| 2/22/16 | MYCC | 22 | 10.77 |
| | | | |

5. During the three years prior to the date of this Certification, I have not participated nor have I sought to participate, as a representative in any class action suit in the United States District Courts under the federal securities laws.

6. I have not received, been promised or offered, and will not accept, any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this class action, except for: (i) such damages or other relief as the Court may award to me as my pro rata share of any recovery or judgment; (ii) such reasonable fees, costs or other payments as the Court expressly approves to be paid to or on behalf of me; or (iii) reimbursement, paid by my attorneys, of actual or reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of this action.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed this August 14, 2017, at West Grove, Pa..

Name: Ronald F. Kinsey

Signed: